UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL IMMIGRANT JUSTICE CENTER, *et al.*, <br><br>                     *Plaintiffs*, <br><br> v. <br><br> THE EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, *et al.*, <br><br>                    *Defendants*. | Civil Action No. 20-cv-0056 (RBW) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY
INJUNCTION AND TO STAY THE EFFECTIVE DATE UNDER 5 U.S.C. § 705**

## TABLE OF CONTENTS

STANDARD OF REVIEW ............................................................................................... 3

ARGUMENT .................................................................................................................... 3

I.     The INA Precludes Jurisdiction Over Plaintiffs' Claims ....................................... 3

II.    Plaintiffs Fall Outside the Statute's Zones of Interest ........................................... 7

III.   Plaintiffs' Claims Are Not Justiciable. .................................................................. 8

       A.     *Plaintiffs Do Not Have Standing* ................................................................ 8

IV.    Plaintiffs' Claims Are Not Likely to Succeed on the Merits. .............................. 11

       A.     *James R. McHenry Had Authority to Promulgate the Rule* ..................... 11

       B.     *Defendants Have Not Violated the APA* .................................................. 12

       C.     *The Rule Is Lawful and Not Arbitrary and Capricious* ........................... 17

       D.     *The Rule Does Not Violate Due Process* ................................................ 25

       E.     *Defendants Did Not Violate the Regulatory Flexibility Act* ................... 29

V.     The Remaining Injunction Factors Require Denial of Plaintiffs' Motion............ 30

       A.     *Plaintiffs Fail to Establish Irreparable Harm* ........................................ 30

       B.     *Plaintiffs Fail To Establish That The Balance of Equities And Public Interest Favor The Requested Injunction.* ................................................................... 31

       CONCLUSION.................................................................................................... 32

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Aguilar v. ICE*,
    510 F.3d 1 (1st Cir. 2007) ................................................................... 2, 5

*Aguirre-Aguirre*,
    526 U.S. ....................................................................................... 16, 19

*Al-Fara*,
    404 F.3d ............................................................................................ 19

*Ariz. Christian Sch. Tuition Org. v. Winn*,
    563 U.S. 125 (2011) ........................................................................... 10

*Asylum Seeker Advocacy Project (ASAP) v. Barr*,
    409 F. Supp. 3d 221 (S.D.N.Y. 2019) .................................................... 6

*Ayuda, Inc. v. Reno*,
    7 F.3d 246 (D.C. Cir. 1993) .................................................................. 6

*Cardoza-Fonseca*,
    480 U.S. ............................................................................................ 19

*Cement Kiln Recycling Coal. v. EPA*,
    255 F.3d 855 (D.C. Cir. 2001) ............................................................. 27

*Chevron*,
    467 U.S. .................................................................................... passim

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................... 10

*Clarke v. Sec. Indus. Ass'n*,
    479 U.S. 388 (1987) ............................................................................. 7

*Conn. Light & Power Co. v. NRC*,
    673 F.2d 525 (D.C. Cir. 1982) ............................................................. 13

*Constanza-Martinez v. Holder*,
    739 F.3d 1100 (8th Cir. 2014) ........................................................ 19, 20

*Covad Commn's Co. v. FCC*,
    450 F.3d 528 (D.C. Cir. 2006) ............................................................. 14

*CSX Transp., Inc. v. Surface Transp. Bd.*,

584 F.3d 1076 (D.C. Cir. 2009) ............................................................................ 15

*E. Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ............................................................................ 8

*E.B. v. U.S. Dep't of State*,
  422 F. Supp. 3d 88 n.4 (D.D.C. 2019) ............................................................ 28

*Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin.*,
  858 F. Supp. 2d 1 (D.D.C. 2012) ..................................................................... 28

*Fair Empl. Council of Greater Washington, Inc. v. BMC Mktg.*,
  28 F.3d 1268 (D.C. Cir. 1994) ........................................................................... 9

*FCC v. Schreiber*,
  381 U.S. 279 (1965) .......................................................................................... 13

*Feld Entm't, Inc.*,
  659 F.3d 13 (D.C. Cir. 2011) .............................................................. 9, 10, 12

*Food & Water Watch, Inc. v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) ........................................................................... 3

*Fund for Animals v. Frizzell*,
  530 F.2d 982 (D.C. Cir. 1975) ......................................................................... 30

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018) ....................................................................................... 8

*Guedes v. ATF*,
  920 F.3d 1, 10 (D.C. Cir. 2019) ....................................................................... 29

*Havens Realty Co. v. Coleman*,
  455 U.S. 363 (1982) .......................................................................... 8, 10, 11

*INS v. Legalization Assistance Project of LA Cty.*,
  510 U.S. 1301 (1993) ......................................................................................... 8

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*,
  407 F.3d 1250 (D.C. Cir. 2005) ....................................................................... 15

*J.E.F.M. v. Lynch*,
  837 F.3d (9th Cir. 2016) ......................................................................... 2, 5, 9

*Jacksonville Port Auth. v. Adams*,
  556 F.2d 52 (D.C. Cir. 1977) ........................................................................... 29

*Jarkesy v. SEC*,

803 F.3d 9 (D.C. Cir. 2015) ................................................................................................ 4

*Jennings v. Rodriguez,*
138 S. Ct. 830 (2018) ........................................................................................................... 6

*LaChance,*
522 U.S. ............................................................................................................................... 24

*Landon v. Plasencia,*
459 U.S. 21 (1982) ............................................................................................................... 24

*League of Women Voters of United States v. Newby,*
838 F.3d 1 (D.C. Cir. 2016) ................................................................................................. 29

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014) .............................................................................................................. 7

*Lujan v. Nat'l Wildlife Fed'n,*
497 U.S. 871 (1990) .............................................................................................................. 7

*Martinez v. Napolitano,*
704 F.3d 620 (9th Cir. 2012) ............................................................................................... 6

*Mathews v. Eldridge,*
424 U.S. 319 (1976) ........................................................................................................ 26, 27

*Mid-Tex Elec. Co-op Inc. v. FERC,*
773 F.2d 327 (D.C. Cir. 1985) ............................................................................................. 27

*Morton v. Ruiz,*
415 U.S. 199 (1974) .............................................................................................................. 16

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.,*
463 U.S. 29 (1983) ................................................................................................................ 16

*Munaf v. Geren,*
553 U.S. 674 (2008) ........................................................................................................... 2, 3

*Ne. Md. Waste Disposal Auth. v. EPA,*
358 F.3d 936 (D.C. Cir. 2004) ............................................................................................. 15

*Newdow v. Bush,*
355 F. Supp. 2d 265 (D.D.C. 2005) ..................................................................................... 30

*NIPNLG,*
456 F. Supp. 3d ................................................................................................................. 5, 9

*NTEU v. United States,*

101 F.3d 1423 (D.C. Cir. 1996) .......................................................................................... 9, 10

*NTEU*,
101 F.3d .......................................................................................................................... 10

*Nw. Immigrant Rights Project v. USCIS, No. 19-3283*,
2020 WL 5995206 (D.D.C. Oct. 8, 2020) ............................................................................ 5

*O.A. v. Trump*,
404 F. Supp. 3d 109 (D.D.C. 2019) ................................................................................. 5, 8

*Olabanji v. INS*,
973 F.2d 1232 (5th Cir. 1992) ............................................................................................ 24

*P.L. v. U.S. ICE, No. 1:19-CV-01336*,
2019 WL 2568648 (S.D.N.Y. June 21, 2019) ...................................................................... 6

*PETA v. U.S. Dep't of Agric.*,
797 F.3d 1087 (D.C. Cir. 2015) ........................................................................................... 9

*Petry v. Block*,
737 F.2d 1193 (D.C. Cir. 1984) ......................................................................................... 13

*Phillips Petroleum Co. v. EPA*,
803 F.2d 545 (10th Cir. 1986) ........................................................................................... 13

*Reno v. Am.-Arab Anti-Discrimination*,
Com., 525 U.S. 471 (1999) ............................................................................................. 2, 4

*Reno*,
93 F.3d 897 (D.C. Cir. 1996) ........................................................................................... 2, 8

*Rodriguez-Lariz v. I.N.S.*,
282 F.3d 1218 (9th Cir. 2002) ........................................................................................... 24

*Salazar-Gonzales v. Lynch*,
798 F.3d 917 (9th Cir. 2015) ............................................................................................. 24

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ......................................................................................................... 8

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........................................................................................................... 29

*Sure-Tan, Inc. v. NLRB*,
467 U.S. 883 (1984) ........................................................................................................... 11

*Thompson v. N. Am. Stainless, LP*,

562 U.S. 170 (2011) .................................................................................. 7

*ViroPharma, Inc. v. Hamburg*,
  898 F. Supp. 2d 1 (D.D.C. 2012) ......................................................... 2

*Vt. Yankee Nuclear Power Corp. v. NRDC*,
  435 U.S. 519 (1978) ...................................................................... 13, 14

*Warth v. Seldin*,
  422 U.S. 490 (1975) .............................................................................. 8

*Winter v. NRDC*,
  555 U.S. 7 (2008) ......................................................................... 3, 28

*Withrow v. Larkin*,
  421 U.S. ............................................................................................. 26

*Statutes*

5 U.S.C. § 553 .................................................................................... 13

5 U.S.C. § 553(c) ............................................................................... 13

5 U.S.C. § 701 ...................................................................................... 1

5 U.S.C. § 705 ...................................................................................... 1

5 U.S.C. §§ 603-04 .............................................................................. 1

8 U.S.C. 1229a ..................................................................................... 1

8 U.S.C. §1252(a)(5) ........................................................................ 4, 9

8 U.S.C. § 1158(a)(2)(B) .................................................................. 17

8 U.S.C. § 1252(a) ............................................................................... 6

8 U.S.C. § 1252(b)(9) ............................................................ 2, 4, 5, 23

8 U.S.C. §§ 1229a(b)(4)(A) ............................................................. 17

28 U.S.C. 510 .................................................................................... 11

31 U.S.C. § 9701(a) .......................................................................... 29

U.S.C. § 9701(a) ............................................................................... 29

*Other Authorities*

85 Fed. Reg. 80 ................................................................................................ 1

85 Fed. Reg. 81 ........................................................................................... 1, 30

85 Fed. Reg. 82 .............................................................................................. 14

## INTRODUCTION

Plaintiffs' motion seeks—at the eleventh hour— to halt a rule making effort issued by the Executive Office of Immigration Review ("EOIR"), a component of the U.S. Department of Justice (the "Department"), that implements reforms and procedures for seeking asylum and related protection in this country. *Procedures for Asylum and Withholding of Removal*, 85 Fed. Reg. 81,698 (Dec. 16, 2020) ("Rule"). The Executive Office for Immigration Review, an agency within the Department, conducts immigration court proceedings, appellate reviews, and administrative hearings as an essential component of the nation's immigration adjudication system.

The Court should deny Plaintiffs extraordinary request for this Court to broadly interfere in and assume oversight over the asylum process and procedure, despite the laws enacted by Congress.

Plaintiffs—organizations that provide legal and other services to immigrants—bring this challenge to the Final Rule, asserting claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, the Regulatory Flexibility Act (RFA), 5 U.S.C. §§ 603-04, and the Due Process and Equal Protection Clauses of the Fifth Amendment to the U.S. Constitution. *See* Compl., ECF No. 1. Plaintiffs' claims disregard the authority vested in the Agency by both the INA. Nevertheless, they seek emergency injunctive relief against the Rule on the basis of their APA, Due Process, and RFA claims. *See* Pls.' Mot. for Temp. Rest. Order, Prelim. Inj. And Stay of Effective Date under 5 U.S.C. § 705, ECF No. 4. None of their claims, however, provides a basis for such relief.

At the threshold, all of Plaintiffs' claims fail because the INA, at 8 U.S.C. § 1252(b)(9), precludes district court review over "*any* issue . . . arising from *any removal-related activity*," including "policies-and-practices challenges" arising from any "action taken or proceeding brought to remove an alien." *J.E.F.M. v. Lynch*, 837 F.3d at 1026, 1029-30 (9th Cir. 2016) (emphasis added); 8 U.S.C. § 1252(b)(9); *see also Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007). The Supreme Court has deemed

Section 1252(b)(9) "the unmistakable 'zipper' clause," channeling judicial review of all "decisions and actions leading up to or consequent upon final orders of deportation," including "non-final order[s]," into one proceeding exclusively before a court of appeals. *Reno v. Am.-Arab Anti-Discrimination Com.*, 525 U.S. 471, 483, 485 (1999). Because Plaintiffs' claims unmistakably concern "questions that arise from the removal of an alien," this Court lacks jurisdiction to hear them. *Aguilar*, 510 F.3d at 9.

Even if Plaintiffs were able to skirt the jurisdictional bar of section 1252(b)(9), they cannot clear the APA's zone-of-interests requirement. Because the INA supplies a cause of action to challenge issues arising from removal proceedings only to aliens, organizations such as Plaintiffs are outside the immigration statutes' zone of interests, as the D.C. Circuit has held. *See, e.g.*, *FAIR v. Reno*, 93 F.3d 897, 900-04 (D.C. Cir. 1996).

Finally, even assuming some basis exists for district court jurisdiction over Plaintiffs' claims, Plaintiffs cannot demonstrate an actual likelihood of success on those claims. *ViroPharma, Inc. v. Hamburg*, 898 F. Supp. 2d 1, 16 (D.D.C. 2012) (citing *Munaf v. Geren,* 553 U.S. 674, 690 (2008)). None of their APA claims has merit. First, the Agency issued the Final Rule pursuant to and consistent with authority vested in it by Congress under the INA.. Second, in effecting the changes the Agency examined the relevant factors and evidence and responded to broad-ranging comments from the public, and amply explained the basis and reasoning for the Rule. And third, the comment period the Agency allowed did not violate any procedural requirement of the APA, and was not unreasonable under the circumstances. Plaintiffs' claim under the RFA fails, too: by accurately certifying that the Final Rule will not have a significant economic impact on small entities because it regulates only individuals, the Agency satisfied that statute's requirements.

The remaining preliminary injunction factors similarly indicate against preliminary relief.

Plaintiffs' assertions of irreparable harm are largely speculative and, regardless, Plaintiffs have done nothing to show that irreparable injury is certainly impending in the absence of this Court's action before a final ruling on the merits can be made.  For similar reasons, the balance of equities and the public interest tips against Plaintiffs where the Agency's actions have been taken simply to comply with Congress's will.

Because Plaintiffs fail to show entitlement to the extraordinary relief they seek against a proper exercise of fee authority, their motion should be denied.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008). A party seeking such relief "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Any claims of injury on which standing will be premised must be evaluated "under the heightened standard for evaluating a motion for summary judgment" in "determining whether [] to grant the motion for preliminary injunction." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015).

## ARGUMENT

The Court should deny the motion for a preliminary injunction. Here, Plaintiffs lack standing and are not within the INA's zone of interests. Even if Plaintiffs could surmount these threshold hurdles, its claims lack merit, the equities are against it, and its requested relief is far too broad.

## I.    The INA Precludes Jurisdiction Over Plaintiffs' Claims

Although "[l]itigants generally may seek review of agency action in district court under any applicable jurisdictional grant," "[i]f a special statutory review scheme exists . . . it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial

review in those cases to which it applies." *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015). The INA provides such a scheme.

For aliens placed in immigration court, the INA provides that, "notwithstanding any other provision of law," "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. §1252(a)(5). And section 1252(b)(9) bars jurisdiction to "review all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" other than through "judicial review of a final order." *Id.* § 1252(b)(9). Section 1252(b)(9) is "the unmistakable 'zipper' clause," channeling judicial review of all "decisions and actions leading up to or consequent upon final orders of deportation," including "non-final order[s]," into one proceeding exclusively before a court of appeals. *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 483, 485. This provision circumscribes district court jurisdiction over "*any* issue—whether legal or factual—arising from *any* removal-related activity [which] can be reviewed only through the [administrative] process." *J.E.F.M. v. Lynch*, 837 F.3d at 1026, 1029-31 (9th Cir. 2016) (cited in *NIPNLG*, 456 F. Supp. 3d at 29-30); *see Aguilar*, 510 F.3d at 9 ("As its text makes manifest, [8 U.S.C. § 1252(b)(9)] was designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals."). That includes "challenging policies and practices that are applied during the course of a removal proceeding," *NIPNLG*, 456 F. Supp. 3d at 29; *see also J.E.F.M.*, 837 F.3d. at 1035, arising from any "action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9), whether or not the challenge is to an actual final order of removal

or whether there even is a final order at all. *J.E.F.M.*, 837 F.3d at 1032.[1]

Under section 1252(b)(9), this Court lacks jurisdiction over this case. Plaintiffs challenge various procedural processes throughout the immigration court process, including a 15-day application deadline, immigration judges' ("IJs") ability to introduce evidence, rejection of asylum applications if not accompanied by the requisite filing fee[2], and the 180-day statutory deadline for the adjudication of asylum claims. They allege that these changes will "make it more difficult for asylum seekers to present their claims to IJs," "face the possible rejection of their applications on technical grounds at all points in the process," and that the 180-day statutory deadline restricts IJ authority to continue asylum hearings beyond the 180-day period set by statute for their adjudication—a period the Government is almost never able to meet." Mot. at 6. In that regard, Plaintiffs challenge "the process by which their [members'] removability will be determined." *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (plurality). The questions of law underlying their Complaint arise from removal proceedings because they involve challenges to the "procedure and substance of an agency determination"—an application of the rule to individual aliens—"that

---

[1]     Unlike the First and Ninth Circuits, which have held that "Congress has clearly provided that all claims—whether statutory or constitutional—that 'aris[e] from' immigration removal proceedings can only be brought through the petition for review process in federal courts of appeals," *J.E.F.M.*, 837 F.3d at 1029 (9th Cir. 2016), the D.C. Circuit has not interpreted the scope of § 1252. In addition to *NIPNLG*, which agreed with the appellate courts' interpretation of the provision, 456 F. Supp. 3d at 29, one other court in this district has examined the issue. That court recognized an "exception" to section 1252's jurisdictional bar if a plaintiff challenges "the validity of a regulation of general applicability based on the administrative record generated in rulemaking." *O.A. v. Trump*, 404 F. Supp. 3d 109, 128 (D.D.C. 2019). The government respectfully disagrees with and has appealed that decision. *O.A.*, 404 F. Supp. 3d 109, *appeal docketed*, No. 19-5272 (D.C. Cir. Oct. 11, 2019).

[2]     This Court has already enjoined the effect of the filing fee rule promulgated by U.S. Citizenship and Immigration Services ("USCIS"), *see Nw. Immigrant Rights Project v. USCIS*, No. 19-3283, 2020 WL 5995206, at *33 (D.D.C. Oct. 8, 2020). Accordingly, Plaintiffs acknowledge that "there is no applicable asylum application fee." Mot. at 14 n.2.

is inextricably linked to [any] order of removal." *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th

Cir. 2012); *see Jennings*, 138 S. Ct. at 841 (plurality).

Section 1252 likewise precludes district-court jurisdiction over the organizational

plaintiffs' claims. Section 1252 permits review only of orders of removal, which can only issue to

individual *aliens*. 8 U.S.C. § 1252(a). So the organizations' challenges to the procedures that will

be used to determine third-party aliens' removability are likewise barred by section 1252. *See

Ayuda, Inc. v. Reno*, 7 F.3d 246, 250 (D.C. Cir. 1993) (holding that organizational plaintiffs "d[o]

not have standing to raise their claims challenging INS policies or regulations" because under

section 1252's exclusive review scheme, "these claims may only be brought in court by individual

aliens after the INS' statutory interpretation is applied to them, their application for legalization is

denied, and they are subject to deportation orders"); *see also Asylum Seeker Advocacy Project

(ASAP) v. Barr*, 409 F. Supp. 3d 221, 225 (S.D.N.Y. 2019) (section 1252(b)(9) bars challenges,

including challenges by organizations, to process for issuing removal orders where relief plaintiffs

seek would indirectly "challenge [] the removal orders" issued under that process); *P.L. v. U.S.

ICE*, No. 1:19-CV-01336, 2019 WL 2568648, *3 (S.D.N.Y. June 21, 2019) (similar).

The fact that Plaintiffs have challenged the rule under the Administrative Procedure Act

("APA") does not allow them to circumvent 8 U.S.C. § 1252(b)(9). Section 1252(b)(9) clearly

provides that "all questions of law" arising out of immigration court proceedings must be raised

exclusively in the appropriate court of appeals. And the APA itself makes clear that its judicial

review provisions apply "except to the extent that [another] statute preclude[s] judicial review." 5

U.S.C. 701(a); *see also Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) ("The APA

explicitly does not apply 'to the extent that . . . statutes preclude judicial review,' as the REAL ID

Act does in this instance." (citation omitted) (quoting 5 U.S.C. § 701(a)). Here, as explained above,

8 U.S.C. §1252(b)(9) precludes such review. Moreover, 5 U.S.C. § 702 waives sovereign immunity in an action seeking equitable relief from wrongful agency action "except where . . . there is an adequate remedy at law." A petition for review provides an adequate remedy at law as set out in 8 U.S.C. § 1252 for any claim challenging the application of the regulation to any alien during immigration court proceedings.

For these reasons, this Court lacks jurisdiction over Plaintiffs' claims.

## II.     Plaintiffs Fall Outside the Statute's Zones of Interest

Even if the INA did not preclude jurisdiction over Plaintiffs' claims, those claims would still fail because Plaintiffs are outside the zone of interests served by the INA. "Whether a plaintiff comes within the zone of interests is an issue that requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014) (quotations omitted). In the APA context, the zone-of-interests requirement ensures that the party seeking review of an agency action is "'adversely affected or aggrieved' by that action 'within the meaning of a relevant statute.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (quoting 5 U.S.C. § 702). And to be "'adversely affected or aggrieved within the meaning' of a statute, the plaintiff must establish that the injury he complains of . . . falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Id.* Notably, a plaintiff falls outside the zone when its "interests are . . . marginally related to or inconsistent with the purposes implicit in the statute[,]" *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987), *even if* it "might technically be injured in an Article III sense." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011).

As explained *supra* Section I, the INA supplies a cause of action to challenge issues arising

from removal proceedings only to aliens, and only through circumscribed judicial review in the courts of appeals following administrative proceedings, or in the U.S. district court in narrow circumstances not applicable here. Organizations therefore cannot be within the INA's zone of interests. When confronted with a similar challenge brought by "organizations that provide legal help to immigrants," Justice O'Connor concluded that the relevant INA provisions were "clearly meant to protect the interests of undocumented aliens, not the interests of [such] organizations[,]" and the fact that a "regulation may affect the way an organization allocates its resources . . . does not give standing to an entity which is not within the zone of interests the statute meant to protect." *INS v. Legalization Assistance Project of LA Cty.*, 510 U.S. 1301, 1302, 1305 (1993) (O'Connor, J., in chambers). The D.C. Circuit has thus held that immigrant advocacy organizations are outside the immigration statutes' zone of interests. *See, e.g.*, *FAIR*, 93 F.3d at 900-04.[3]

**III**.    **Plaintiffs' Claims Are Not Justiciable.**

    A.    *Plaintiffs Do Not Have Standing*

To satisfy establish standing under Article III, the plaintiff must demonstrate it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Foremost among these requirements is injury in fact": "the 'invasion of a legally protected interest' that is 'concrete and particularized.'" *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). Where an organization sues on its own behalf, it must establish standing in the same manner as an individual. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975).

---

[3] While the Ninth Circuit held otherwise in *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742 (9th Cir. 2018), it did not consider *FAIR*, 93 F.3d at 903, which is controlling precedent in this Circuit. Although another court in this district has declined to extend *FAIR* to nonprofit organizations that provide legal services to refugees, the government respectfully disagrees with and has appealed that decision. *O.A. v. Trump*, 404 F. Supp. 3d 109, *appeal docketed*, No. 19-5272 (D.C. Cir. Oct. 11, 2019).

Plaintiffs here are organizations that claims to have standing based on potential frustration of its mission and costs it would incur if the Rule were to take effect. Mot. at 42 n.10.[4] That is insufficient. The Supreme Court recognized in *Havens Realty Co. v. Coleman*, 455 U.S. 363, 379 (1982), that an organization may be able to establish standing where it would have suffered some other injury if it had not diverted resources to counteract the problem. But in that case, "[f]ederal law vested [the organization] with a specific legal right to truthful, non-discriminatory housing information, and [defendant's] racially disparate misinformation targeted [the organizational plaintiff] along with the individuals it was aiding." *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1100 (D.C. Cir. 2015) (Millett, J., dubitante). The INA does the opposite. It channels review of its provisions into removal proceedings—administrative proceedings followed by judicial review in the federal courts of appeals, 8 U.S.C. §§ 1252(a)(5), (b)(9). The INA provides no remedy for an organizational plaintiffs and instead repeatedly circumscribes review outside of the process it created for individual review. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1033 (9th Cir. 2016) ("Congress intended to channel all claims arising from removal proceedings ... to the federal courts of appeals and bypass the district courts."); *see id.* at 1033-35 (outlining Congress' repeated efforts over several decades to channel review of removal orders through removal proceedings and into courts of appeals); *Nat'l Immigration Project of Nat'l Lawyers Guild v. EOIR*, 456 F. Supp. 3d 16, 29 (D.D.C. 2020) ("Plaintiffs' access-to-counsel and due process claims arise from the course of removal hearings, placing them within § 1252(b)(9)'s broad jurisdictional bar.").

Even putting aside Congress's unmistakable intent to limit review to the paths created in the INA, the D.C. Circuit has imposed a two-part inquiry to determine *Havens* standing: (1) "whether the defendant's allegedly unlawful activities injured the plaintiff's interest in promoting its mission," and, if so, (2) "whether the plaintiff used its resources to counteract that injury." *ASPCA v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011). The injury to the mission is a critical

---

[4]     References to page numbers are to the ECF page count found at the header of the filed document, not to the page number referenced at the footer of the motion.

element to establishing this type of organizational standing; otherwise, the diversion of resources is a purely self-inflicted injury that will not suffice. *See Fair Empl. Council of Greater Washington, Inc. v. BMC Mktg.*, 28 F.3d 1268, 1276-77 (D.C. Cir. 1994). Plaintiffs do not satisfy this test.

To satisfy the first element, the government's conduct must "directly conflict with the organization's mission." *NTEU v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996). Plaintiffs state their mission is to "defend and uphold the legal rights of immigrants to seek safety and security in the United States." *see* Mot. at 43. Plaintiffs' claim that the Rule "frustrates these missions by denying the legal rights of immigrants and making immigration representation costlier and more time- and labor-intensive and, under this Rule in particular, next to impossible." *Id*. But Plaintiffs merely allege that the Rule may impede their ability to form attorney-client relationships and some additional administrative efforts to comply with the rule; it does not adequately identify ways in which the Rule would frustrate its mission. *See ASPCA*, 659 F.3d at 25, 27 ("If the challenged conduct affects an organization's activities, but is neutral with respect to its substantive mission," then it is "'entirely speculative' whether the challenged practice will actually impair the organization's activities."); *NTEU*, 101 F.3d at 1434 ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient."). Importantly, nothing in the rule prevents Plaintiffs from continuing to represent asylum-seeking clients or promoting the rights of refugees and asylum seekers or advocating policies that further human rights, and Plaintiffs do not allege otherwise. Nor does the Rule prohibit its clients from applying for asylum, withholding of removal, or CAT protection. The supposed harm may be "a setback to [their] abstract social interests," *Havens*, 455 U.S. at 379, but it is not a cognizable injury for Article III standing. A contrary standard would afford a legal organization standing to challenge any rule that alters the legal landscape, which would eviscerate Article III and turn courts into "Council of Revision, conferring on itself the power to invalidate laws at the behest of anyone who disagrees with them." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011).

Even if Plaintiffs could meet the first requirement for organizational standing, Plaintiffs have failed to demonstrate that it meets the second requirement to "use[] its resources to counteract that injury." *ASPCA*, 659 F.3d at 25. Plaintiffs' first claim they will not be able to form attorney-client relationships with noncitizens because asylum seekers may be removed before Plaintiffs are able to meet them. Mot. at 43. But this concern is speculative and self-inflicted, and thus insufficient to confer standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Plaintiffs also claim that they will not be able to provide as much *pro bono* representation or participate in volunteer programs, or conduct "adequate interviews" or evidence gathering" due to new timeframe requirements. Mot. at 45. Again, these consequences are entirely speculative. These claims therefore fail to demonstrate "concrete and demonstrable injury to the organization's activities," with a "consequent drain on [its] resources" required under *Havens*, 455 U.S. at 379.

Finally, Plaintiffs lack standing because they are not subject to the Rule and have no legally protected interest in maintaining its current organizational structure or in the rule's application to third parties. Plaintiffs have no "judicially cognizable interest" in "enforcement of the immigration laws" against someone else or to challenge the government's provision of benefits to a third party. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984).

**IV**.   **Plaintiffs' Claims Are Not Likely to Succeed on the Merits.**

    A.   *James R. McHenry Had Authority to Promulgate the Rule*

Plaintiffs first challenge the Rule on grounds that Director of EOIR, James R. McHenry, lacked the authority to promulgate the Rule. Mot. at 16. Plaintiffs argue that the INA confers authority on the Attorney General to establish such regulations, or through delegation by the Attorney General. *Id*. Plaintiffs' arguments that the Attorney General did not appropriately delegate this authority with regards to the Rule are incorrect and should summarily be dismissed.

Director McHenry was well within his authority to promulgate the rule as this authority had been specifically delegated to him by the Attorney General. Section 1103(g) of Title 8 United

States Code provides that the United States Attorney General shall have authority to "issue regulations [governing] . . . immigration proceedings" and may "delegate such authority." Similarly, 28 U.S.C. § 510 provides that the Attorney General may delegate functions of the Attorney General to "any other officer, employee, or agency" of the Department of Justice. In turn, 8 C.F.R. § 1003.0(b)(1)(ix) provides that the Director of EOIR, a Department of Justice component may "exercise such . . . authorities as the United States Attorney General may provide." On November 17, 2020, then Attorney General, William Barr, issued Attorney General Order Number 4910-2020. In that Order, the Attorney General delegated authority to the Director of EOIR to "issue regulations related to immigration matters within the jurisdiction of the Executive Office for Immigration Review." [5] Pursuant to that delegation, Director McHenry, an officer of the United States who was appointed by the Attorney General, issued the challenged regulation, which clearly relates to immigration matters "within the jurisdiction of [EOIR]" given that it regulates the procedures that apply in immigration court proceedings. *See* 85 Fed. Reg. at 81, 749-50 (*citing* Attorney General Order Number 4910-2020 as authority for issuing the rule).

   B.   *Defendants Have Not Violated the APA*

In Count II of the Complaint, Plaintiffs assert three primary objections to the rulemaking process. First, they challenge the Agency's *comment* procedures, alleging that the Agency's chosen 30-day comment period violated the APA's notice-and-comment requirements both on its face and in light of the circumstances of the then-emerging global pandemic. Mot. at 18. Second, they challenge that the final Rule incorporated an "additional category" of asylum applicants to whom the 15-day deadline would apply, which was "not a logical outgrowth" of the proposed rule. Mot.

---

[5]    Defendants ask that the Court take judicial notice of Attorney General Order 4910-2020, a copy of which is attached hereto. It is also cited in the challenged regulation at 85 Fed. Reg. 81, 749-50.

at 19. Third, Plaintiffs allege that "multiple interlocking rulemakings prevented commenters from assessing the combined effect of the administration's changes to asylum policy. *Id.* at 20. None of Plaintiffs' challenges is likely to succeed, for the Agency adequately complied with the APA's procedural requirements and exercised its discretion reasonably in doing so, and Plaintiffs have identified no harm which has accrued to them owing to any procedural deficiencies.

Part of this Rule is dependent upon a provision in another rule, Procedures for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review, 85 Fed. Reg. 80,274 (Dec. 11, 2020), which was enjoined nationwide in *Pangea Legal Services*, No. 20-cv-09253-JD (N.D. Cal. Jan. 8, 2021). Specifically, the rule enjoined in *Pangea* altered the type of proceeding an alien found to have a credible fear is subject to for adjudication of her claim. Presently, such aliens are placed into removal proceedings under 8 U.S.C. 1229a. Under the rule in *Pangea*, such aliens would instead be placed into asylum-and-withholding-only proceedings during which they would only be able to apply for asylum and related protection. The Rule here prescribes a 15-day deadline for applications in those special proceedings. However, because of *Pangea*, at this time, this portion of the Rule would have no effect.

1.    The Comment Period Satisfied the APA

Plaintiffs argue that the Agency violated the notice and comment requirements because the 30 days allotted for public comment was issued on an "expedited timeframe, providing only 30 days for comments—only half the time generally considered reasonable under Executive Orders 12,866 and 13,563 and D.C. Circuit precedent" and that the 30-day time period did not allow for commenters to comment on the interplay between this Rule and the December 11 rule. This argument fails.

*First*, 5 U.S.C. § 553 sets forth the procedures necessary in informal rulemaking: the

agency must provide notice of the proposed rulemaking, and "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." This opportunity to participate is all that the APA requires. 5 U.S.C. § 553(c). *Second*, the APA "does not specify a minimum time for submission of comments in an informal rulemaking," *Petry v. Block*, 737 F.2d 1193, 1201 (D.C. Cir. 1984)—some "opportunity to participate is all that the APA requires," *Phillips Petroleum Co. v. EPA*, 803 F.2d 545, 559 (10th Cir. 1986). Therefore, courts generally lack the authority to arbitrarily impose some minimum required comment-period length. *See id.* (citing *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543 (1978)). *Third*, the APA entrusts this sort of procedural minutiae to an agency's reasonable discretion. *Vt. Yankee*, 435 U.S. at 543 ("[A]dministrative agencies 'should be free to fashion their own rules of procedure and methods of inquiry permitting them to discharge their multitudinous duties.'") (quoting *FCC v. Schreiber*, 381 U.S. 279, 290 (1965))).

The D.C. Circuit, in fact, has explicitly found a 30-day comment period reasonable even for regulations that were "technical[ly] complex[]." *Conn. Light & Power Co. v. NRC*, 673 F.2d 525, 534 (D.C. Cir. 1982) (finding the agency's "choice of a [30-day] comment period" not "unreasonable," notwithstanding "the technical complexity of the regulations," noting that "[n]either statute nor regulation mandates that the agency do more"). Further, the breadth and number of comments received suggest that the comment period was reasonable. And, the failure of Plaintiffs to identify a genuine issue that they were unable to raise during that period—discussed in more detail below—also strongly suggests that the period was reasonable. 85 Fed. Reg. 82,771 ("[C]ommenters did not suggest or indicate what additional issues the comment period precluded them from addressing; to the contrary, the comments received reflect both a breadth and a level of detail that suggest that the period was more than sufficient.").

14

Nor does anything in the APA obligate the Agency to extend the selected comment period because some commenters asked the Agency to do so nor because that period subsequently came to include "the midst of COVID-19." Mot. at 10. And Plaintiffs have identified no caselaw supporting their contention otherwise, which contravenes the Supreme Court's holding in *Vermont Yankee* that the APA entrusts this sort of procedural minutiae to an agency's reasonable discretion. *Vt. Yankee,* 435 U.S. at 543 ("[A]dministrative agencies should be free to fashion their own rules of procedure and methods of inquiry permitting them to discharge their multitudinous duties."(citation omitted)).

> 2.    Defendants' Inclusion of the "Withholding Only" Category of Asylum
>        Seekers Was a Logical Outgrowth of the Notice of Proposed Rule

Plaintiffs also challenge the final Rule's inclusion of the "withholding only" category of asylum applicants on the grounds that the NPRM's 15-day application period applied to only one category of asylum seekers, "asylum and withholding only."

To satisfy the APA's notice requirement, the NPRM and the final rule need not be identical: "[a]n agency's final rule need only be a 'logical outgrowth' of its notice." *Covad Commn's Co. v. FCC*, 450 F.3d 528, 548 (D.C. Cir. 2006). A final rule qualifies as a logical outgrowth "if interested parties 'should have anticipated' that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period." *Ne. Md. Waste Disposal Auth. v. EPA*, 358 F.3d 936, 952 (D.C. Cir. 2004) (citations omitted). By contrast, a final rule fails the logical outgrowth test and thus violates the APA's notice requirement where "interested parties would have had to 'divine [the agency's] unspoken thoughts,' because the final rule was surprisingly distant from the proposed rule." *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259–60 (D.C.Cir.2005) (internal citations omitted); *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1079–80 (D.C. Cir. 2009).

15

Here, the inclusion of the "withholding only" category of asylum seekers was a logical outgrowth of the NPRM. Indeed, the underlying rationale for including this additional category in the final Rule stemmed from comments received during the notice-and-comment process. *See* 85 Fed. Reg. at 81, 727 ("The Department agrees with the commenter who recommended applying the 15-day deadline to applications for statutory withholding of removal and protection under the CAT for aliens in proceedings under 8 CFR 1208.2(c)(2). The Department sees no reason to distinguish between aliens subject to proceedings under 8 CFR 1208.2(c)(1) and those subject to proceedings under 8 CFR 1208.2(c)(2), as both groups are generally detained.") Because the Department considered this comment, which was publicly available, the logical conclusion is that Plaintiffs were put on notice that the inclusion of this secondary category was possible. Plaintiffs seem to suggest that inclusion of the "withholding only" category in the final Rule would necessitate another notice and comment period, which is not mandated by the APA.

### 3.   Commenters Were Not Prevented from Assessing the Combined Effect of the Rule Due to Multiple Rulemakings

Plaintiffs also challenge the Rule on the grounds that EOIR could not conduct "any sound analysis of the Rule's effects" due to numerous rulemakings and ongoing litigation. Mot. at 20. But Plaintiffs arguments are entirely speculative and not rooted in fact because multiple proposed rulemakings did not prevent commenters from providing their support or concern for the proposed rules. Indeed, the final Rule received 2,031 comments, which included comments expressing concern regarding the interplay of this Rule and the December 11 rule. *See* 85 Fed. Reg. at 81, 700; 81, 702. Further, that other rulemakings referenced by Plaintiffs have been enjoined undercut any argument necessitating emergency relief. *See Pangea Legal Services*, No. 20-cv-09253-JD (N.D. Cal. Jan. 8, 2021).

C.    *The Rule Is Lawful and Not Arbitrary and Capricious*

Plaintiffs contend that provisions of the Rule are unlawful and arbitrary and capricious. Mot. at 20-40. Plaintiffs are wrong.

To begin, to survive arbitrary-and-capricious review, the agency need only articulate "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). In the Rule, the Departments interpret the INA and set forth procedures to administer the INA. It is well established that "[t]he power of an administrative agency to administer a congressionally created. . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron*, 467 U.S. at 843 (quoting *Morton v. Ruiz*, 415 U.S. 199, 231 (1974)); *Aguirre-Aguirre*, 526 U.S. at 424-25 (holding that the structure of the INA makes clear that Chevron applies to the Attorney General's interpretation of the INA and that "judicial deference to the Executive Branch is especially appropriate in the immigration context"). Thus, as long as the Departments' interpretations of the statute are reasonable, they should receive deference and their actions are not arbitrary and capricious. *See Chevron*, 467 U.S. at 842-844.

1.    15-Day Deadline for Filing of Asylum Applications

The Rule imposes a 15-day deadline for filing asylum applications for aliens in proceedings that are limited considering applications for asylum, withholding of removal, and CAT protection—i.e., asylum-and-withholding-only proceedings and withholding-only proceedings. 85 Fed. Reg. at 81,698. That deadline is from the date of the alien's first hearing before an immigration judge. 85 Fed. Reg. at 81,751. Such a deadline for filing the application after one has already "considered and made a claim for asylum or protection" through the screening mechanisms that come before placement in such limited proceedings is reasonable. *See* 85 Fed. Reg. at 81,711.

The deadline "balances the risk of degradation or loss of evidence with the need to provide adequate time for preparation and the need to provide expedited consideration of the claims" of these aliens, whom the statute requires the government to detain. *Id.* Importantly, the Rule does not require that all evidence be submitted with the application but recognizes that the application may be supplemented and amended after it is timely filed. *Id.*

Plaintiffs claim that this provision is contrary to the statute, which requires that aliens file any application for asylum within one year. Mot. at 21 (citing 8 U.S.C. § 1158(a)(2)(B)). They further claim that a deadline for filing claims for withholding of removal or CAT protection violate the statute because the statute does not include any deadlines. *Id.* Plaintiffs misunderstand the nature of this Rule. The aliens subject to the deadline are not those who have not yet made a claim to asylum but rather aliens who have already begun the process (which they have a year to initiate under the statute). And nothing in the INA precludes immigration judges from setting a specific deadline for filing the asylum application after one has been found to have a credible or reasonable fear. 85 Fed. Reg. at 81,756. If a year from entry is required, then such aliens would be able to delay their proceedings, which would prolong detention and undermine the expeditious processing of such claims. *Id.*

Plaintiffs also contend that the 15-day deadline is contrary to statutory provisions entitling aliens to counsel. Mot. at 22 (citing 8 U.S.C. §§ 1229a(b)(4)(A), 1362). But the Rule does not prevent aliens from conferring with counsel or from developing their claims and submitting additional evidence after submission of their application. Plaintiffs' claims on this front are speculative.

Plaintiffs further argue that the Department failed to consider various issues it believes should have been addressed. Mot. at 26-36. Each of the issues they claim the Rule failed to consider

are indeed directly addressed in the Rule. Plaintiffs disagreement with the response is not sufficient to find the Rule arbitrary and capricious. And Plaintiffs' speculations about how the Rule may lead to delays is indicative that they have replaced their own judgment with that of the Department, which has a better understanding of the adjudicative process as the agency that performs such adjudications. The list below shows where each issue Plaintiffs claim the Department did not adequately consider is addressed in the Rule:

- "Language barriers and translation needs," Mot. at 27-28, are addressed at 85 Fed. Reg. at 81,712, 81,713, 81,728;

- "Access to counsel" issues, Mot. at 28-31, are addressed at 85 Fed. Reg. at 81,704, 81,719, 81,723;

- "Corroborating evidence," Mot. at 31-32, is addressed at 85 Fed. Reg. at 81,712, 81,722;

- "Trauma," Mot. at 32, is addressed at 85 Fed. Reg. at 81,728;

- The expansion of expedited removal, Mot. at 32-33, is addressed at 85 Fed. Reg. at 81,702, 81,709;

- The expansion of asylum-and-withholding-only proceedings to include those in expedited removal, Mot. at 32-33, is address at 85 Fed. Reg. at 81,702;

As to the claim that the Rule failed to consider the impact of the deadline on aliens subject to the Migrant Protection Protocols ("MPP"), Plaintiffs are mistaken. Mot. at 33-34. Aliens in MPP are subject to removal proceedings under section 1229a, to which the 15-day deadline does not apply. *See* 85 Fed. Reg. at 81,698. And Plaintiffs undervalue the existence of exceptions to the 15-day deadline. *See* Mot. at 35. The exceptions provide applicants with more time where it is needed, on a case-by-case basis. Plaintiffs' speculation as to how this will work in practice do not undermine the Rule's reasonableness.

Plaintiffs' claim that EOIR was required to submit quantitative evidence that the Rule will "speed up asylum adjudication," is unsupported by law. Mot. at 35-36. EOIR has expertise in

asylum adjudications and understands how changes to the adjudicative process will effect case processing. Plaintiffs' assertions that EOIR is incorrect, without further explanation as to why, do not undermine the Rule.

Finally, Plaintiffs' claim that the 15-day application deadline violates international law is misplaced. *See* Mot. 25-26. First of all, the Refugee Convention and CAT are non-self-executing. *See Al-Fara*, 404 F.3d at 743. And when interpreting U.S. asylum and related protection law, it is domestic law, not international sources, that controls. *See INS v. Aguirre-Aguirre, 526 U.S. 415, 426-27* (1999); *Cardoza-Fonseca*, 480 U.S. at 439. Thus, the question is whether the provision contravenes U.S. law. And as demonstrated above, it does not.

2. Allowing Immigration Judges to Enter Evidence

The Rule also codifies long-standing agency practice of allowing immigration judges to submit evidence into the record. 85 Fed. Reg. at 81,700; *see Matter of S-M-J-*, 21 I. & N. Dec. 722, 729 (BIA 1997) (en banc) (holding that "Immigration Judges [] should place general country condition information into evidence" because such evidence "is essential for an Immigration Judge's evaluation of an applicant's credibility"); 85 Fed. Reg. at 59,695 (collecting cases). Plaintiffs claim that this practice is contrary to the statute because Congress changed the language of the statute from instructing adjudicators to "present and receive" evidence to just "receive" evidence. Mot. at 23-24. Plaintiffs' reliance on this change alone is unavailing. As the Rule points out, "it is unclear why 'present' was removed from the INA" and immigration judges "maintain an affirmative duty to develop the record." 85 Fed. Reg. at 81,741 (quoting *Constanza-Martinez v. Holder*, 739 F.3d 1100, 1102 (8th Cir. 2014)). Plaintiffs assert that *Matter of S-M-J-* and *Constanza-Martinez* are unavailing because these cases construed the statutory prior language. Mot. at 23. Plaintiffs are correct about *Matter of S-M-J-*, but not about *Constanza-Martinez*. And

it is the fact that the removal of "present and" from the statute did not remove the immigration judge's duty to develop the record, as recognized in *Constanza-Martinez*, that *Matter of S-M-J-* remains binding. Furthermore, Plaintiffs entirely ignore the remaining case law cited in the NPRM and Rule, which further supports the long-standing nature of this practice and the practice's necessity.

Plaintiffs' claim that the provision is arbitrary and capricious likewise fails. *See* Mot. at 40. Plaintiffs claim that the Rule allows the immigration judge to include evidence without a reasonable opportunity to examine the evidence. *Id.* But as Plaintiffs admit, the Rule allows the applicant to object at the time the evidence is presented. *Id.* Thus, applicants indeed have a reasonable opportunity to examine and object to the evidence.

### 3.  180-Day Adjudication Requirement

The Rule also codifies a requirement that immigration judges adjudicate asylum applications within 180 days of filing absent exceptional circumstances. 85 Fed. Reg. at 81,699. This provision reflects the INA's requirement that "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(iii). As Plaintiffs admit, the statute does not define the term "exceptional circumstances." *See* Mot. at 24. That term is ambiguous and committed to the agency to define. *See Chevron*, 467 U.S. at 843. And, as Plaintiffs note, EOIR looked to the INA's definition of that term elsewhere and incorporated it in this Rule. Mot. at 25. Such a decision is reasonable, and EOIR's definition should receive deference.

Plaintiffs' claim that the "exceptional circumstance" definition elsewhere in the INA was limited to that specific provision and that EOIR adopting it for use here "contravenes Congress'

intent." Mot. at 25. Plaintiffs' reason that "Congress expressly limited" the definition "so that it applied *only* for purposes of" section 1229a, *id.*, but the statute does not say as much. It instead affirmatively provides that the definition controls for sections 1229a and 1229b without precluding the agency from adopting that definition for use elsewhere. Accordingly, Plaintiffs' fail to show the provision contravenes the INA.

Plaintiffs also claim this provision is arbitrary and capricious because EOIR failed to consider how immigration judges could meet the requirement considering that "they have almost never been able to do so before." Mot. at 38. But Plaintiffs ignore the fact that this is a statutory requirement, and Plaintiffs do not explain why, even if the agency has not yet been able to consistently meet that requirement, incorporating a statutory requirement into the regulations and thereby further "reiterat[ing] its policy to comply with that statutory provision" is arbitrary and capricious. *See* 85 Fed. Reg. at 81,700.

### 4. Rejection of Incomplete Applications

The Rule adds a provision allowing for the rejection of an asylum application that is incomplete and provides that an "application is incomplete if it does not include a response to each of the required questions contained in the form, is unsigned, is unaccompanied by the required materials …, is not completed and submitted in accordance with the form instructions, or is unaccompanied by any required fee receipt or other proof of payment." 85 Fed. Reg. at 81,750-51. If an application is found to be incomplete, it will be rejected and the applicant will have 30 days to correct the deficiencies. 85 Fed. Reg. at 81,750. If the applicant does not do so and does not establish exceptional circumstances, the application will be deemed abandoned. *Id.* Finally, the Rule removes a current provision deeming any application complete if it is not rejected within 30 days of filing. 85 Fed. Reg. at 81,699. The Rule's completeness requirement is not new as it

already exists. *See* 85 Fed. Reg. at 81,727. Rather, the Rule clarifies the completeness standard. *Id.*

Plaintiffs allege that this provision is arbitrary and capricious because its "elimination of the existing 30-day timeline for IJs to reject incomplete applications . . . belies EOIR's purported focus on accelerating the adjudication of asylum claims." Mot. at 36. It is unclear how this is so— requiring that aliens complete their application at any time after filing promotes efficiency by ensuring that the application is ready for a merits hearing. Plaintiffs similarly assert that "EOIR has no explanation of how requiring IJs to reject applications based on blank answers to inapplicable questions will aid in the prompt adjudication of asylum claims." *Id*. But the Rule indeed addresses this question: "By ensuring that applications are complete at filing, the parties and court can be confident that they are proceedings with an adjudication on the full application and, as noted in the proposed rule, that the application is completed as timely as possible.". 85 Fed. Reg. at 81,727. It also "protects the alien by ensuring that there are no incorrect assumptions regarding the facts of an alien's claim or personal status set out in the application." *Id.*

Plaintiffs further argue that EOIR failed to explain how rejecting applications for "failing to respond to inapplicable questions will serve the purposes of the system Congress created, or lead to any other efficiencies or advantages for EOIR" and cites another agency's decision to reconsider a similar rule after litigation. Mot. at 37. Plaintiffs' argument fails to recognize that completeness is already a requirement. And that another agency decided to reconsider adopting a similar rule is irrelevant. Further, it is common sense that failing to respond to questions the applicant deems inapplicable can cause confusion where the question is left blank and not notated as not applicable.

Finally, Plaintiffs allege that the 30-day deadline for completing a rejected application "is

problematic" and will cause particular problems for applicants in MPP, concerns they allege were raised by commenters and not discussed in the Rule. Mot. at 37-38. Plaintiffs misconstrue the Rule's discussion of the deadline. Although the Rule does not explicitly discuss applicants in MPP, it addressed concerns about "general delays" and other issues in receiving notice, such as "mail carrier mistakes" and recognized that there will always be risks that a deadline may be missed that are outside the applicant's control. 85 Fed. Reg. at 81,730. But for such circumstances, the regulation allows for an exception to the 30-day deadline where the applicant establishes "exceptional circumstances." 85 Fed. Reg. at 81,751. Plaintiffs do not explain why this is insufficient.

### 5. Evidence from non-governmental sources

The Rule provides that when adjudicating a claim for asylum and related protection, an immigration judge may rely on material provided by U.S. government sources and may rely on other foreign or non-governmental sources "if those sources are determined by the judge to be credible and the material is probative." 85 Fed. Reg. at 81,751. This codifies the long-standing requirement that evidence in immigration proceedings be "probative and its admission [] fundamentally fair." 85 Fed. Reg. at 81,737 (citing cases). "The rule simply clarifies that foreign government and non-governmental sources are not automatically presumed credible, and evidence from these sources is not presumed probative, as the prior regulatory language may have unintentionally implied." 85 Fed. Reg. at 81,737.

Plaintiffs allege that this provision creates a "two-tiered standard . . . results in a system in which the Executive . . . provides favored evidence even though it is not per se more reliable than non-governmental sources." Mot. 30. But as the Rule explains, reports within a department's expertise "warrant particular consideration because of their credible source." 85 Fed. Reg. at

81,737. Plaintiffs' suggestion that this Rule would allow immigration judges "to consider an rely on non-credible or non-probative U.S. Government sources," Mot. 30, is lacking in foundation. Plaintiffs fail to provide any example, outside vague "concerns" about reports issued by the U.S. Department of State to support its assumption that there are non-credible U.S. Government sources. Such speculation does not show that this Rule is arbitrary and capricious.

D. *The Rule Does Not Violate Due Process*

Plaintiffs speculate that the rule violates due process by imposing procedural obstacles on asylum applicants; by allowing IJs to "rely on non-credible governmental evidence while restricting non-governmental evidence" and by allowing IJs to "admit their own favored evidence." It bears repeating that a non-citizen may bring a constitutional challenge, including a due process challenge to application of the regulations at issue here, through a petition for review filed with the appropriate federal circuit court of appeals after the conclusion of removal proceedings and any appeal to the Board of Immigration Appeals. *See* 8 U.S.C. 1252(b)(9) ("[j]udicial review of all questions of law and fact, including interpretation and application of *constitutional* provisions . . . arising from . . . any proceeding brought to remove an alien from the United States shall be available only in judicial review of a final order") (emphasis added). This is particularly appropriate given that due process claims are fact-dependent. *See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) ("'[D]ue process is flexible,' we have stressed repeatedly, and it "calls for such procedural protections as the particular situation demands.").

Even if Plaintiffs were to overcome this jurisdictional impediment, Plaintiffs' procedural due process claims are unlikely to succeed on the merits. In evaluating what process is due in the immigration context, "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative largely within the control of the executive and the legislature." *Landon*

*v. Plasencia*, 459 U.S. 21, 34 (1982). Additionally, in order to succeed on a due process claim challenging the conduct of immigration court proceedings, the non-citizen must demonstrate prejudice. Indeed, the cases cited by Plaintiffs make clear that due process challenges to removal proceedings require a showing of prejudice to succeed which necessarily must be assessed on a case by case basis. *See* Pl. Br. at 31(citing *Rodriguez-Lariz v. I.N.S.*, 282 F.3d 1218, 1226 (9th Cir. 2002); *Salazar-Gonzales v. Lynch*, 798 F.3d 917, 921 (9th Cir. 2015); *Olabanji v. INS*, 973 F.2d 1232, 1234 (5th Cir. 1992)).

Here, Plaintiffs speculate that the challenged procedures will prejudice their client's statutory right to seek asylum or similar protection. But that is insufficient to establish a due process claim. And in any event the rule does not "in any way "negate" the United States' asylum system, prevent aliens from applying for asylum, or prevent the granting of meritorious claims". 85 Fed. Reg. at 81, 706. Due process in immigration proceedings requires notice and a meaningful opportunity to be heard, neither of which are affected by this rule. *See LaChance v. Erickson,* 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard."). Aliens in proceedings subject to the rule will continue to be provided notice of removability, have an opportunity to present the case to an immigration judge,); and have an opportunity to appeal. *See* 85 Fed. Reg. at 81,720.

Moreover, the regulation contains numerous procedural protections that are sufficient to safeguard an applicant's statutory rights. For example, Plaintiffs contend that the rule imposes "an impossible-to-meet 15-day filing deadline for affected noncitizens to file an application—with documentary support and, potentially, proof of payment of the fee and they speculate that this will result in the removal of many noncitizens to countries from which they fled for fear of persecution or torture." Mot at 4. Yet, Plaintiffs ignore the fact that the fifteen day filing deadline can be

extended "for good cause" and that "the rule requires only the filing of an application by a deadline and does not alter existing provisions regarding the supplementation of an existing application. *See* Fed. Reg. at 81, 709 ("Similarly, most commenters ignored or downplayed the rule's provision of an extension of the 15-day filing deadline for good cause without addressing why the possibility of such an extension would not respond to concerns about timing. Similarly, most commenters asserted that the rule required the submission of both an application and all supporting documents with no further opportunity to update or supplement it, but the rule requires no such thing. The rule requires only the filing of an application by a deadline and does not alter existing provisions regarding the supplementation of an existing application. 8 CFR 1208.4(c); *cf. Matter of Interiano-Rosa*, 25 I&N Dec. 264 (BIA 2010) (distinguishing between the submission of an application itself and the later submission of supporting documents).").  An applicant's ability to seek an extension of the filing deadline and further supplement the application at a later date are sufficient procedural safeguards to satisfy any due process requirements. *See also Reg*. at 81712 ("The deadline itself does not preclude an immigration judge's full consideration of the facts of a claim . . . If [] an alien needs additional time to file an application, the alien may request an extension for good cause . . . Likewise, if the application needs to be amended or supplemented later in the proceedings due to evidence-issues, the alien may request to amend or supplement the application. . . . Similarly, nothing in the rule prohibits an immigration judge from granting a continuance to obtain corroborating evidence in appropriate cases. *Matter of L-A-C-*, 26 I&N Dec. 516 (BIA 2015). Moreover, the rule itself provides that immigration judges themselves may submit relevant evidence consistent with their duty to develop the record in appropriate circumstances. Through these mechanisms, the Department provides aliens a full opportunity to present all relevant facts to an immigration judge within the deadline.").

Plaintiffs claim that the rule violates due process by allowing IJs to "rely on non-credible, non-probative government-authored evidence" and by allowing IJs to "admit their own favored evidence." Mot. at 32. As an initial matter it must be noted that the "immigration judge are required to exercise their "independent judgment and discretion," 8 CFR 1003.10(b), when evaluating asylum applications and immigration judges are entitled to a presumption of "honesty and integrity" that they will lawfully fulfill their duties. *Withrow v. Larkin,* 421 U.S. 35, 47 (1975). The purpose of the rule is not to allow the IJ to introduce evidence favoring either party but "to allow the adjudicator, consistent with current practice and case law, to develop the record sufficiently to make an informed decision regarding the merits of the case." *See* Fed. Reg. at 81, 174. Moreover, the rule explicitly provides that the parties have the opportunity to respond or object to the evidence that the immigration judge submits. *See id.* (the rule "requires that the parties "have had an opportunity to comment on or object to the evidence prior to the issuance of the immigration judge's decision." 8 CFR 1208.12(a). Additionally, the Department has previously explained that requiring the immigration judge to provide a copy of submitted evidence to both parties was specifically intended to "give the parties an opportunity to respond to or address the information appropriately."). The fact that each party has an opportunity to object and respond to any evidentiary submission serves to satisfy the requirements of due process.

Finally, in assessing whether the Government's procedures satisfy due process, the Court must also consider the Government's interests. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Department issued the rule "to ensure asylum claims are expeditiously considered, especially claims of detained aliens, to better effectuate statutory directives in the INA, to ensure authority is appropriately exercised, to ensure immigration judges consider only complete asylum applications and a developed record containing probative evidence from credible sources, and to promote

impartial and timely adjudications consistent with the law." Reg. at 81704. On balance, the Government's interests in addition to the numerous safeguards built into the rule are sufficient to satisfy due process.

E. *Defendants Did Not Violate the Regulatory Flexibility Act*

Plaintiffs are wrong that the Final Rule violates the Regulatory Flexibility Act. Mot. at 41. Plaintiffs assert that the Agency failed to adequately consider the effect of the Final Rule on "small entities" as required by the RFA. *See id*. But as the Agency explained in the Rule, under the circumstances, the RFA requires nothing more than a certification that the regulation will not "have a significant economic impact on a substantial number of small entities." 85 Fed. Reg. at 81, 748. And here, the rule does not "limit in any way the ability of practitioners to accept cases, manage dockets, or assess fees. Nothing in the rule directly, or indirectly, regulates practitioners or entities; the rule regulates individual asylum seekers." *Id*.

The Circuit has "consistently rejected the contention that the RFA applies to small businesses indirectly affected by the regulation of other entities." *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 869 (D.C. Cir. 2001). This line of authority is rooted in the plain text of the statute, which is "limited to small entities subject to the proposed regulation," and demonstrates no coverage as to "indirect effects" that regulations may have on small entities not directly regulated. *Mid-Tex Elec. Co-op Inc. v. FERC*, 773 F.2d 327, 342–43 (D.C. Cir. 1985) (citing 5 U.S.C. § 603(b)(3), (4)). The Plaintiff organizations here are not directly regulated by the procedures imposed in the Final Rule. Indeed, "practitioners remain free to accept cases, manage dockets, and charge fees as they see fit. Moreover, commenters' concerns regarding how practitioners will be affected by the rule either are wholly speculative due to the case-by-case nature of asylum adjudication, fail to account for the provisions of the rule that have already been in effect for decades, or are beyond the scope of this rulemaking." 85 Fed. Reg. at 81, 748.

## V.    Remaining Injunction Factors Require Denial of Plaintiffs' Motion

### A.  *Plaintiffs Fail to Establish Irreparable Harm*

Plaintiffs also have not established that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. Plaintiffs assert harms to themselves and their members, and based on procedural violations of the APA. None suffice to obtain the "extraordinary remedy" of a preliminary injunction. *Id.* at 22.

As to the first category of harms—those to the Plaintiff organizations—Plaintiffs posit a cascading and speculative series of harms arising from the Final Rule, specifically based on Plaintiffs' prognostication that their organizations will "force them to divert resources, put their funding at risk, and frustrate their respective missions by gravely harming their clients," Mot. at 43. But the premise of these asserted harms is no more than speculation. Indeed, as discussed above, the Agency has not been presented with any evidence demonstrating that any substantial decrease in immigration filings would occur as a result of these procedural changes. At the least, Plaintiffs do nothing to establish that all of the broad organizational harms they assert would occur immediately and before this Court can consider the merits. Accordingly, Plaintiffs have not established any basis for emergency relief as to this aspect of their challenge to the Rule.

Plaintiffs' bare assertion of procedural violations of the APA does not support preliminary relief. "[C]ourts generally 'will not base a finding of "irreparable injury" on a procedural violation standing alone[.]'" *E.B. v. U.S. Dep't of State*, 422 F. Supp. 3d 81, 88 n.4 (D.D.C. 2019) (quoting *Elk Assocs. Funding Corp. v. U.S. Small Bus. Admin.*, 858 F. Supp. 2d 1, 31 (D.D.C. 2012)). That rule is consistent with the Supreme Court's admonition that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—

30

is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Plaintiffs' claims of irreparable injury must therefore rise or fall on their assertions of injury to themselves and their members.

    B.  *Plaintiffs Fail To Establish That The Balance of Equities And Public Interest Favor The Requested Injunction.*

The remaining preliminary injunction factors—whether the balance of equities and public interest are in favor of preliminary relief—also lean against Plaintiffs' request for preliminary relief. These factors merge when the United States is the defendant. *Guedes v. ATF*, 920 F.3d 1, 10 (D.C. Cir. 2019); *see also See Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 58–59 (D.C. Cir. 1977) (recognizing that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate"). But that is precisely what the Agency has done via this rulemaking: streamline the process for the asylum process. It is inconsistent with D.C. Circuit precedent, to say that the public interest is favored by preliminary relief that would undermine EOIR's ability to comply with Congress's expressed intent that "each service . . . provided by an agency . . . to a person . . . is to be self-sustaining to the extent possible." *Compare* 31 U.S.C. § 9701(a) *with League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (citation omitted)). That conclusion is bolstered by the fact that the procedures set by the Final Rule are in support of immigration adjudication services; there is a strong public interest in the enforcement of federal immigration law.

Further, an additional consideration warrants rejection of Plaintiffs claim for emergency relief: Plaintiffs' unexplained delay in bringing this suit. EOIR issued the final Rule on December 16, 2020. *See* 85 Fed. Reg. 81, 698. Yet, Plaintiffs waited 27 days, until January 12, 2021 and just

three days before the final Rule was set to take effect, to file their challenge. *Newdow v. Bush*, 355

F. Supp. 2d 265, 292 (D.D.C. 2005) (finding that "[a]n unexcused delay in seeking extraordinary

injunctive relief may be grounds for denial because such delay implies a lack of urgency and

irreparable harm" (collecting cases)); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir.

1975) (holding that a delay of forty-four days before seeking injunctive relief was "inexcusable"

and "bolstered" the "conclusion that an injunction should not issue," particularly where the party

seeking the injunction had knowledge of the pending nature of the alleged irreparable harm).

Plaintiffs unexplained delay should foreclose the emergency relief they seek.

Considering these points, as well as the meager showing Plaintiffs have made for harms

that would immediately occur upon effectiveness of the Final Rule, the remaining preliminary

injunction factors weigh against Plaintiffs' motion. If this Court enters any relief, it should sever

only those provisions regarding which Plaintiffs have established a likelihood of success. 5 U.S.C.

§ 551(13) (defining agency action to "include[] the whole or part of an agency rule, order, license,

sanction, relief, or the equivalent or denial thereof, or failure to act") (emphasis added). The Court

should also limit any relief to Plaintiffs or their clients.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be denied.

Dated: January 13, 2021                MICHAEL R. SHERWIN
                                       Acting United States Attorney

                                       BRIAN P. HUDAK
                                       Acting Chief, Civil Division

                                       By: */s/ Brenda González Horowitz*
                                       BRENDA GONZÁLEZ HOROWITZ
                                       D.C. Bar No. 1017243
                                       Assistant United States Attorney
                                       U.S. Attorney's Office, Civil Division

555 Fourth Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2512
Brenda.Gonzalez.Horowitz@usdoj.gov

*Counsel for Defendants*